THOMAS A. WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
twilloughby@ffwplaw.com
jniemann@ffwplaw.com

Attorneys for the Chapter 11 Trustee,
Russell K. Burbank

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

#### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>A GREENER GLOBE,<br><br>Debtor. | CASE NO.: 16-21900-C-11<br><br>Chapter 11<br><br>DCN:  FWP-14<br><br>Date:        August 22, 2017<br>Time:        10:30 a.m.<br>Courtroom: 35<br>                    501 I Street, 6th Floor<br>                    Sacramento, CA |

**CHAPTER 11 TRUSTEE'S MOTION FOR AUTHORITY TO ENTER INTO LOAN AND OPTION AGREEMENT WITH VINDRAUGA CORPORATION TO (I) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 361, 363, AND 364; (II) GRANT LIENS AND SECURITY INTERESTS; AND (III) SELL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO OPTION AGREEMENT**

1

## TABLE OF CONTENTS

2   JURISDICTION ..................................................................................................1

3   RELIEF REQUESTED .........................................................................................1

4   FACTS AND BACKGROUND ............................................................................2

5       Outstanding Deeds of Trust Against Terminated Leasehold Interest .................3

6       Need for Environmental Study ...........................................................................6

7       Chapter 11 Loan and Option .............................................................................6

8   MATERIAL PROVISIONS OF THE PROPOSED TRANSACTION .........................7

9       A.   Chapter 11 Loan ......................................................................................8

10      B.   Option Agreement ...................................................................................8

11      C.   Bidding Procedures for the Transaction .................................................8

12  LEGAL AUTHORITY .......................................................................................10

13      **A.**   The Transaction Is Appropriate Under Bankruptcy Code Section 364 ...............10

14      **B.**   The Transaction Is Appropriate Under Bankruptcy Code Section 363 ...............12

15          1.   Sound Business Purpose ..............................................................13

16          2.   Fair and Reasonable Consideration .............................................13

17          3.   Good Faith ..................................................................................14

18      **C.**   The Sale of the Business Assets Free and Clear of Liens and Other Interests
19           Is Authorized by Section 363(f) ..........................................................14

20      **D.**   The Bid Procedures Are Appropriate and Will Maximize the Value
           Received for the Estate. .......................................................................16

21      **E.**   The Successful Bidder Shall Be a Good Faith Purchaser and Is Entitled to
           the Full Protection of Section 363(m) of the Bankruptcy Code, and the
22           Transfer of the Real Property Does Not Violate Section 363(n). .........................17

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3      **CASES**

4      *Cello Bag Co. Inc. v Champion Int'l Corp. (In re Atlanta Packaging Products,*
         *Inc.)*
5         99 B.R. 124 (Bankr. N.D. Ga. 1988) ....................................................................... 17

6      *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*
         107 F.3d 558 (8th Cir. 1997) .................................................................................. 16
7

       *Glendale Fed. Bank v. Hadden*
8         73 Cal. App. 4th 1150 (1999) ......................................................................... 11, 16

9      *In re 240 North Brand Partners, Ltd.*
         200 B.R. 653 (B.A.P. 9th Cir. 1996) ...................................................................... 12
10

       *In re 995 Fifth Ave. Assocs., L.P.*
11        96 B.R. 24 (Bankr. S.D.N.Y. 1989) ................................................................. 16, 17

12     *In re Ames Dept. Stores, Inc.*
         115 B.R. 34 (S.D.N.Y. 1990) ................................................................................. 10
13

       *In re Bakalis*
14        220 B.R. 525 (Bankr. E.D.N.Y. 1998) ................................................................... 18

15     *In re Bygaph, Inc.*
         56 B.R. 596 n.8 (Bankr. S.D.N.Y. 1986) ............................................................... 15
16

       *In re Collins*
17        180 B.R. 447 (Bankr. E.D. Va. 1995) .................................................................... 15

18     *In re Defender Drug Stores*
         145 B.R. 312 (B.A.P. 9th Cir. 1992) ...................................................................... 10
19

       *In re Elliot*
20        94 B.R. 343 (E.D. Pa. 1988) .................................................................................. 14

21     *In re Ewell*
         958 F.2d 275 (9th Cir. 1992) .................................................................................. 13
22

       *In re Financial News Network, Inc.*
23        126 B.R. 152 (Bankr. S.D.N.Y. 1991) ................................................................... 17

24     *In re Fruehauf Trailer Corp.*
         Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997) ..................................... 17
25

       *In re Gaylord Grain L.L.C.*
26        306 B.R 624 (B.A.P. 8th Cir. 2004) ....................................................................... 15

27     *In re Martin*
         91 F.3d 389 (3d Cir. 1996) .................................................................................... 12
28

*In re Marvel Entm't Group, Inc.*
　　273 B.R. 58 (Bankr. D. Del. 2002) ...................................................................... 12

*In re Montgomery Ward Holding Corp.*
　　Case No. 97-1409 (PJW) (Bankr. D. Del. Aug 6, 1997) ..................................... 17

*In re Octagon Roofing*
　　123 B.R. 583 (Bankr. N.D. Ill. 1991) .................................................................. 15

*Kabor Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*
　　111 F.3d 269 (2d Cir. 1997) ................................................................................. 18

*Michigan Employment Sec. Comm'n v Wolverine Radio Co. (In re Wolverine Radio Co.)*
　　930 F.2d 1132 n.24 (6th Cir. 1991) ..................................................................... 15

*Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*
　　147 B.R. 650 (Bankr. S.D.N.Y. 1992) ............................................................ 16, 17

*Sinclair Oil Corp. v. Levien*
　　280 A.2d 717 (Del. 1971) ..................................................................................... 12

**STATUTES**

11 U.S.C. § 361 ................................................................................................................ 1

11 U.S.C. § 363 ....................................................................................................... passim

11 U.S.C. § 364 ..................................................................................................... 1, 6, 10

11 U.S.C. § 502 ................................................................................................................ 3

11 U.S.C. § 503 ................................................................................................................ 6

11 U.S.C. § 506 ................................................................................................................ 3

11 U.S.C. § 544 .............................................................................................................. 16

11 U.S.C. § 545 .............................................................................................................. 16

11 U.S.C. §§ 101 *et seq.* .................................................................................................. 1

28 U.S.C. § 1334 .............................................................................................................. 1

28 U.S.C. § 1408 .............................................................................................................. 1

28 U.S.C. § 1409 .............................................................................................................. 1

28 U.S.C. § 157 ................................................................................................................ 1

Motion for Authority to Borrow Funds and
Sell Property Pursuant to Option Agreement

**<u>RULES</u>**

Federal Rule of Bankruptcy Procedure 2002 ...........................................................................1

Federal Rule of Bankruptcy Procedure 4001 ......................................................................1, 8

Federal Rule of Bankruptcy Procedure 6004 ...........................................................................1

Federal Rule of Bankruptcy Procedure 9014 ...........................................................................1

Russell K. Burbank, the duly appointed Chapter 11 Trustee in the above captioned bankruptcy case (the "Trustee"), files this motion for authority to enter into a Loan and Option Agreement with Vindrauga Corporation to (I) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 361, 363, and 364; (II) Grant Liens and Security Interests; and (III) Sell Property Free and Clear of Liens Pursuant to Option Agreement (the "Motion"). In support of this Motion, the Trustee relies upon the Declarations of Russell K. Burbank ("Burbank Declaration") and Howard Justus ("Justus Declaration"), exhibits filed in support of the Motion, and the following points and authorities:

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of the bankruptcy estate herein, and accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for relief are sections 361, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002, 4001, 6004 and 9014, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of California.

**RELIEF REQUESTED**

1. By this Motion, the Trustee requests, subject to overbidding, an order approving the use of property of the estate other than in the ordinary course of business and for authority to sell property free and clear of liens pursuant to a loan and option agreement (the "Transaction") with Vindrauga Corporation ("Lender") as set forth in more detail in the Loan and Option Agreement attached as Exhibit A to the Exhibit Document filed herewith, to:

a. Immediately borrow $2.6 million ("Chapter 11 Loan"), secured by a lien on the estate's Real Property (as defined below) subject only to unpaid real property taxes, to pay (i) all the current secured creditors except the Central Valley Regional Water Quality Control Board ("Water Resources Board") and (ii) for the Environmental Study (as defined below) of the Landfill (as defined below) and other administrative expenses of the estate;

b. Authorize the Trustee to sell the Debtor's Real Property (as defined below)

to Lender free and clear of liens pursuant to an option agreement for $3.2 million without overbid or further order of the Court, which option must be exercised on or before the later of (i) December 31, 2017, or (ii) sixty days after the delivery to Lender of the Environmental Study (the "Option"); and

       c.    Approve the proposed bidding procedures on the Transaction set forth herein.

2.    In addition, the Trustee asks for such other and further relief as the Court may deem proper in the circumstances.

## FACTS AND BACKGROUND[1]

3.    On March 28, 2016, Debtor filed a voluntary petition with the United States Bankruptcy Court, Eastern District of California. On May 25, 2016, an order was entered in the bankruptcy case authorizing the appointment of a Chapter 11 Trustee. On June 14, 2016, the Court approved the United States Trustee's appointment of Russell K. Burbank as the Chapter 11 Trustee.

4.    The Debtor is a California corporation qualified to do business as a non-profit public benefit corporation. It was incorporated on December 7, 1993. The corporation was formed to operate recycling centers, provide educational materials and information on conservation and recycling and to provide employment for physically and mentally challenged individuals.

5.    The Debtor owns two contiguous parcels of real property located at 901 and 903 Galleria Blvd., Roseville, California (collectively, the "Real Property"). The Debtor leases a portion of the Real Property to Green Acres Nursery & Supply, LLC ("Green Acres") for the operation of a nursery. Another portion of the Real Property is a covered landfill ("Landfill"), which may present significant environmental issues to potential purchasers.

6.    Based on (i) the Debtor's schedules, (ii) a preliminary title report, (iii) the Trustee's investigations, and (iv) settlements in this bankruptcy case, the Trustee believes the

---

[1] Evidentiary support for the facts is found in the Burbank Declaration filed in support of this Motion as well as the pleadings, schedules and other records filed in the Debtor's case.

following entities assert the following secured interests with respect to the Real Property:[2]

      a.      Placer County Tax Collector holding a statutory lien against the Real Property for outstanding real property taxes, in the estimated amount of $60,000;

      b.      Western Highland Mortgage Fund I, LLC ("Western") asserts first and second deeds of trust against the Real Property, in the estimated amount of $1,141,157;

      c.      James R. Walsh ("Walsh") asserts a third deed of trust against the Real Property, in the estimated amount of $415,000;

      d.      Richard Steffan ("Steffan") asserts a fourth deed of trust against the Real Property, in the estimated amount of $145,000; and

      e.      The Water Resources Board asserts two judgment liens junior to the deeds of trust against the Real Property, in the estimated amount of $907,000. The Trustee believes that a large portion, if not all, of the Water Resources Board's judgment liens may be avoidable as a preference.

7. The deeds of trust of Daniel G. Sheehan and Jacklyn C. Sheehan (collectively, the "Sheehans") against the Landfill have been avoided pursuant to Civil Minute Order approving a settlement between the Trustee and the Sheehans. Dkt. No. 174.

8. The proposed payment to Western shall be a final payment in full satisfaction of all obligations due Western. The proposed payments to Walsh and Steffan shall be interim payments subject to the Trustee's rights to surcharge their collateral under section 506(c) of the Bankruptcy Code.

**<u>Outstanding Deeds of Trust Against Terminated Leasehold Interest</u>**

9. The most recent preliminary title report noted that the following deeds of trust held by Robb Hewitt ("Hewitt") and Weintraub Tobin Chediak Coleman Grodin Law Corporation ("Weintraub") affect the prior master lessee's leasehold interest which has been mutually terminated between the lessor and the lessee that arose out of a leasehold interest between Capitol Waste and the Debtor.

---

[2] The Trustee reserves all rights with respect to liens on the Real Property, including but not limited to any potential actions to avoid the liens and/or claims, or to disallow such claims pursuant to 11 U.S.C. § 502(h).

10.     The leasehold interest between Capitol Waste and the Debtor was the subject of a state court judgment entered in favor of Capitol Waste on or about October 5, 2006 ("2006 Judgment").  A true and correct copy of the 2006 Judgment is attached as Exhibit B to the Exhibit Document filed herewith.  Pursuant to the 2006 Judgment, two master leases between the Debtor and Capitol Waste were reformed and Capitol Waste was granted a 99-year lease with the Debtor.

11.     Hewitt and Weintraub are attorneys who both represented Capitol Waste in litigation against the Debtor and who assert claims against Capitol Waste for unpaid attorneys' fees.  Neither Hewitt nor Weintraub holds a security interest granted by the Debtor, nor were they scheduled as creditors of the Debtor, nor did they file a proof of claim in the Debtor's bankruptcy case.

12.     On or about March 22, 2007, Robb Hewitt recorded a deed of trust with the Placer County recorder (Instrument No. 2007-0028755) against Capitol Waste's interest in the Real Property ("First Hewitt Deed of Trust").  A true and correct copy of the First Hewitt Deed of Trust is attached as Exhibit C to the Exhibit Document filed herewith.

13.     On or about May 13, 2008, Robb Hewitt recorded a second deed of trust with the Placer County recorder (Instrument No. 2008-0039314) against Capitol Waste's interest in the Real Property ("Second Hewitt Deed of Trust").  A true and correct copy of the Second Hewitt Deed of Trust is attached as Exhibit D to the Exhibit Document filed herewith.

14.     On or about November 10, 2008, Robb Hewitt recorded a third deed of trust with the Placer County recorder (Instrument No. 2008-0087787) against Capitol Waste's interest in the Real Property ("Third Hewitt Deed of Trust").  A true and correct copy of the Third Hewitt Deed of Trust is attached as Exhibit E to the Exhibit Document filed herewith.

15.     On or about February 10, 2009, Weintraub recorded a fourth deed of trust with the Placer County recorder (Instrument No. 2009-0009600) against Capitol Waste's interest in the Real Property ("Weintraub Deed of Trust").  A true and correct copy of the Weintraub Deed of Trust is attached as Exhibit F to the Exhibit Document filed herewith.

16.     On or about February 10, 2009, Weintraub recorded a Subordination Agreement with the Placer County recorder (Instrument No. 2009-0009601) by which the Third Hewitt Deed

of Trust was subordinated to the Weintraub Deed of Trust. A true and correct copy of the Weintraub Subordination Agreement is attached as Exhibit G to the Exhibit Document filed herewith.

17. Pursuant to a settlement agreement effective as of January 11, 2013 ("Settlement Agreement"), Capitol Waste "specifically and generally releases any and all interest of any kind in either the Property [defined as the Real Property] and the Lease [imposed on the Property by the 2006 Judgment], and acknowledges that the Lease is no longer in effect. Further, Capitol Waste . . . acknowledges that by way of this settlement agreement it has no interest in the Property of any kind whatsoever." Settlement Agreement at ¶ 4. A true and correct copy of the Settlement Agreement is attached as Exhibit H to the Exhibit Document filed herewith.

18. Consistent with the Settlement Agreement, Capitol Waste executed an Acknowledgment of Satisfaction of Judgment ("Satisfaction of Judgment") deeming the 2006 Judgment to be fully satisfied. On or about January 23, 2013, the Satisfaction of Judgment was filed in the lawsuit in which the 2006 Judgment was entered. A true and correct copy of the filed Satisfaction of Judgment is attached as Exhibit I to the Exhibit Document filed herewith.

19. On or about February 25, 2013, the Satisfaction of Judgment was recorded with the Placer County recorder (Instrument No. 2013-0017866) by the Debtor. A true and correct copy of the recorded Satisfaction of Judgment is attached as Exhibit J to the Exhibit Document filed herewith.

20. On or about April 18, 2013, a Memorandum of Settlement and Lease Termination was recorded with the Placer County recorder (Instrument No. 2013-0037327) by the Debtor. A true and correct copy of the recorded Memorandum of Settlement and Lease Termination is attached as Exhibit K to the Exhibit Document filed herewith.

21. Notwithstanding the release by Capitol Waste of any leasehold interest in the Real Property, neither Hewitt nor Weintraub have released their deeds of trust against that leasehold interest in the Real Property.

22. Under California law, a leasehold mortgagee loses its security if a tenant's lease is terminated so any and all interest of Capitol Waste in the Real Property was released in January

2013 pursuant to the Settlement Agreement and the recorded Satisfaction of Judgment. Accordingly, as of January 2013, Capitol Waste no longer has any interest in the Real Property and all of Hewitt's and Weintraub's security interests in Capitol Waste's leasehold interest in the Real Property, as evidenced by their respective deeds of trust, also were extinguished.

**Need for Environmental Study**

23. The Trustee has attempted to sell the Real Property without performing an environmental analysis ("Environmental Study") to evaluate what may be contained within the Landfill so potential bidders can evaluate their risks in purchasing the Real Property. The Trustee has employed Wallace-Kuhl & Associates ("WKA") to perform the Environmental Study. Dkt. No. 210.

24. On or about June 2, 2017, WKA submitted a work plan for the Environmental Study to the Water Resources Board. The Trustee expects that work plan to be approved shortly. WKA expects to be ready to commence the actual environmental investigation on the Landfill, including performing a geophysical survey of the Landfill and limited exploratory trenching, drilling vertical borings to test what is in the Landfill and performing analytical laboratory testing (collectively, the "Environmental Testing"), by mid-August. If the Environmental Study is to be completed this year, WKA needs to commence the Environmental Testing soon, so the Environmental Testing can be completed prior to the rainy season starting in late 2017.

25. The Trustee has been trying to obtain funds for the Environmental Testing and the Environmental Study. To date, such efforts are unsuccessful, other than through the Transaction.

26. The Trustee is unable to obtain the additional funds needed for the Environmental Study in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code; an administrative expense pursuant to sections 364(a) or 364(b) of the Bankruptcy Code; unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code; or secured debt as described in sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code except as set forth in the Motion.

**Chapter 11 Loan and Option**

27. On March 13, 2017, this Court authorized the Trustee to employ Business Debt

Solutions, Inc. d/b/a Business Capital ("BIZCAP") to identify and consummate one or more transactions with lenders interested in providing financing to pay off the estate's current secured creditors. Dkt. No. 204. Since its employment, BIZCAP has reached out to numerous potential lenders to obtain a loan to the estate to provide funds to pay current secured creditors. To date, the only potential lender to propose a loan is Lender.

28. The Trustee believes that the Chapter 11 Loan will pay the secured claims of Western, Walsh and Steffan as well as provide funds to pay administrative expenses of the estate, including the Environmental Study and, if the Option is not exercised, to conduct an auction of the Real Property either through a motion or a plan process. The Trustee believes that the Water Resources Board will consent to having its security interests in the Real Property subordinated to the deed of trust to be granted to Lender to secure the Chapter 11 Loan.

29. Lender is willing to enter into the Chapter 11 Loan only if Lender also is granted an Option to purchase the Real Property free and clear of liens for $3.2 million, with the Option to be exercised on the later of December 31, 2017, or sixty days after the Lender receives the Environmental Study. The Transaction will be subject to overbid at the hearing to approve the Motion, but there will be no further overbidding or additional Court approval if the Option is exercised.

30. The Trustee believes that the terms of the Transaction are the best available and are fair and reasonable under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duty to the estate, and are supported by reasonably equivalent value and fair consideration. The Transaction has been negotiated in good faith and at arm's length between the Lender and the Trustee.

## MATERIAL PROVISIONS OF THE PROPOSED TRANSACTION

The following is a summary of the material provisions of the proposed Transaction. All the terms of the Loan and Option Agreement and exhibits thereto are not repeated here. Please see Exhibit A for all the terms of the Transaction as set forth in the Loan and Option Agreement and exhibits thereto.

///

**A.**      **Chapter 11 Loan**

Lender will lend the estate $2.6 million secured by a deed of trust against the Real Property and all associated easements, licenses and other real and personal property interests subordinated only to: (i) easements and similar matters to be approved by Lender in its sole discretion; and (ii) unpaid real property taxes. The Chapter 11 Loan will have a $26,000 loan fee deducted from the loan proceeds. The Chapter 11 Loan will accrue interest at an annual rate of 12%. Monthly interest payments of $10,000 will be paid, with additional interest compounding monthly. The Trustee acknowledges that this will result in negative amortization. The Chapter 11 Loan will be due two years after funding or upon dismissal or conversion of the Debtor's case.

The funding of the Chapter 11 Loan is conditioned upon the entry of an order approving the Transaction (the "Approval Order") and the Approval Order becoming final, unless finality is waived by the Trustee and the Lender.

The proposed Chapter 11 Loan does not contain any of the provisions described in Local Bankruptcy Rule 4001-1(c)(5).

**B.**      **Option Agreement**

Concurrent with the funding of the Chapter 11 Loan, Lender shall have the option to purchase the Real Property and all associated easements, licenses and other real and personal property interests for $3.2 million free and clear of liens. The Option needs to be exercised on the later of December 31, 2017, or sixty days after the Lender receives the Environmental Study.

Neither the Option nor the sale of the Real Property to Lender will be subject to overbid once the Approval Order has been entered. The Approval Order shall authorize the Trustee to close the sale of the Real Property to Lender or its assignee pursuant to the Option and Purchase and Sale Agreement without further order of the Court if the Option is exercised by the Lender or its assignee.

**C.**      **Bidding Procedures for the Transaction**

The Trustee requests adoption of bidding procedures, summarized as follows:

(1)      Overbidding on the Transaction will take place at the hearing to approve the Motion.

(2)　　　The initial overbid must provide for: (i) a $2.6 million loan to the estate on terms at least as favorable as those provided by the Lender; (ii) an option to purchase the Real Property for at least $3,500,000 on the later of December 31, 2017, or sixty days after the overbidder receives the Environmental Study; and (iii) any break-up fee approved by the Court. Thereafter, bid increments will be $100,000.

(3)　　　All due diligence by any potential overbidder must be completed prior to the potential overbidder making a bid.

(4)　　　Any person or entity seeking to be considered to be permitted to bid at the hearing on the Motion ("Overbidder") on August 22, 2017, at 10:30 a.m. at the United States Bankruptcy Court, 501 I Street, 6th Floor, Sacramento, California in the courtroom of the Honorable Christopher M. Klein, must deliver **by 5:00 p.m. (PDT) on Tuesday, August 15, 2017,** the following to the Trustee in the offices of his counsel, Felderstein Fitzgerald Willoughby & Pascuzzi LLP, 400 Capitol Mall, Suite 1750, Sacramento, California:

(a)　　　documentation identifying the Overbidder and any principals, owners, members, or shareholders of the bidder and evidencing the prospective Overbidder's source of capital, other financial ability to complete the contemplated transactions, and confirming the ability to conform to Federal requirements if the funds are obtained offshore and/or by a non-United States citizen;

(b)　　　a cashiers' check(s) payable to Russell K. Burbank, Chapter 11 Trustee for A Greener Globe, Inc., in an amount equal to $350,000; and

(c)　　　an Overbidder Loan and Option Agreement ("Overbidder Agreement")[3] signed by the Overbidder (the form of which will be filed with the Court no later than July 14, 2017, and will be available from the Trustee as of that date).

(5)　　　Any application received from a potential Overbidder that meets the above requirements as determined by the Trustee in his reasonable discretion will be considered a "Qualified Bidder." The Trustee shall notify potential overbidders whether their application has

---

[3]　The Overbidder Agreement will have essentially the same terms and conditions as the Lender's Loan and Option Agreement filed with this Motion. Any variances in the Overbidder Agreement apply only to an overbid.

been accepted as a Qualified Bidder by 5:00 p.m. (PDT) on Thursday, August 17, 2017.

        (6)     If an overbid is successful, the deposit by the successful overbidder shall be non-refundable and shall be used as part of the $2.6 million loan to be provided to the estate by the Overbidder.

## LEGAL AUTHORITY

### A.    The Transaction Is Appropriate Under Bankruptcy Code Section 364

A trustee seeking financing under section 364(c) of the Bankruptcy Code must make reasonable efforts to seek sources of unsecured credit available under sections 364(a) and (b) of the Bankruptcy Code, but "is not required to seek credit from every possible source." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (S.D.N.Y. 1990). Here, the Trustee has made all reasonable efforts to obtain unsecured financing, but no source of sufficient unsecured credit has been made available to the Trustee. Thus, the prerequisite to secured borrowing under section 364(c), that unsecured credit is unavailable, has been met.

Section 364(d)(1) provides: "The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if- (A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1).

In reviewing financing arrangements, courts permit such arrangements where the trustee has exercised his basic business judgment consistent with his fiduciary duties. *Ames Dept. Stores*, 115 B.R. at 38. Courts evaluate the facts and circumstances of a debtor's case and accord significant weight to the necessity for obtaining the financing so long as the request does not run afoul of the provisions and policies underlying the Bankruptcy Code. *Id*. at 40. Courts generally will not override the trustee's prudent and responsible exercise of his basic business judgment consistent with his fiduciary duties to the estate and its creditors in negotiating an appropriate financing package. *See In re Defender Drug Stores,* 145 B.R. 312, 316-317 (B.A.P. 9th Cir. 1992).

Here, the Trustee has exercised his business judgment in determining that the proposed

postpetition financing is in the best interests of the Debtor's bankruptcy estate. The proposed Chapter 11 Loan will allow the Trustee to maximize revenue for the bankruptcy estate by allowing the Trustee to complete the Environmental Study and pay secured creditors who will not consent to the Trustee obtaining financing which primes their loans since Lender will not lend in a subordinate position. Postpetition financing is therefore appropriate.

The Trustee has agreed to grant a security interest in the Real Property under the Loan and Option Agreement to secure the Chapter 11 Loan. To the extent the security interest granted under the Loan and Option Agreement can be viewed as priming junior secured creditors, the Trustee believes such creditors will consent to the priming of their liens.

With respect to Hewitt and Weintraub, as a matter of law, neither entity holds a security interest in the Debtor's property, so there is no secured interest being primed by the Chapter 11 Loan. The deeds of trust held by Hewitt and Weintraub are against a leasehold interest between Capitol Waste and the Debtor. Capitol Waste executed the deeds of trust for the benefit of Hewitt and Weintraub; the Debtor did not grant any security interests to those entities and neither Hewitt nor Weintraub are creditors of the Debtor. In January 2013, Capitol Waste released any and all interest Capitol Waste may have held in the Real Property, including any leasehold interest. Under California law, a leasehold mortgagee loses its security if a tenant's lease is terminated. *Glendale Fed. Bank v. Hadden*, 73 Cal. App. 4th 1150 (1999). Under *Glendale*, any and all interest of Capitol Waste in the Real Property was released pursuant to the Settlement Agreement and the recorded Satisfaction of Judgment. Accordingly, as of January 2013, Capitol Waste no longer has any interest in the Real Property and all of Hewitt's and Weintraub's liens on Capitol Waste's leasehold interest in the Real Property, as evidenced by their respective deeds of trust, also were extinguished. Accordingly, neither Hewitt nor Weintraub hold a security interest in the Debtor's Real Property.

The Trustee will use some of the monthly rent from the lease of a portion of the Real Property to Green Acres to pay part of the monthly interest accruing on the Chapter 11 Loan. The Trustee projects that the sale of the Real Property pursuant to the Option will be sufficient to repay the Chapter 11 Loan in a few months. If the Option is not exercised, the Trustee intends to

auction the Real Property. The Trustee believes he will be able to maximize the value of the Real Property at any auction after the time to exercise the Option has passed because the Trustee will have a completed Environmental Study, which is not the case now. If the Chapter 11 Loan is not approved, the Trustee may not be able to complete the Environmental Study this year, and the Trustee's ability to sell the Real Property will be significantly impacted and delayed.

Based on the foregoing and in the exercise of his best business judgment, the Trustee believes that the proposed postpetition, secured financing described above is in the best interests of the estate and that it complies with applicable law in all respects.

**B.     The Transaction Is Appropriate Under Bankruptcy Code Section 363**

Section 363 of the Bankruptcy Code provides, in relevant part, that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, courts will approve a trustee's proposed use of the estate's assets under section 363(b) if it represents a sound business purpose on the part of the trustee. *See, e.g., In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("[D]ebtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification."); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (courts defer to a trustee's judgment concerning use of property under § 363(b) when there is a legitimate business justification. Under the business judgment rule, a court will not interfere with the judgment of a board of directors unless there is a showing of "gross and palpable overreaching." *In re Marvel Entm't Group, Inc.*, 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("under the business judgment rule, a board's 'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will not substitute its own notions of what is or is not sound business judgment'") (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 719-20 (Del. 1971)).

Courts have considered a number of factors in determining whether to approve a sale of assets under section 363(b) including: (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable consideration is being provided; (3) whether the transaction has been proposed and negotiated in good faith; and (4) whether adequate

and reasonable notice has been provided.  *See, e.g., In re Ewell*, 958 F.2d 275 (9th Cir. 1992).

The Trustee submits that the Transaction is a sound exercise of his business judgment and satisfies section 363 of the Bankruptcy Code as the Transaction is necessary and essential to the overall administration of this bankruptcy case.

**1.      Sound Business Purpose**

The proposed Transaction fits squarely within the parameters of the business judgment test.  The Transaction is necessary and essential to the overall administration of this bankruptcy case.  The Trustee has attempted to sell the Real Property without performing an Environmental Study.  The Transaction is necessary for the Trustee to be able to complete the Environmental Testing this year so the Real Property can be sold soon, either to the Lender through the Option or to another party.

The proposed Chapter 11 Loan is the only financing offer the Trustee has received.  The Trustee has been marketing the Real Property for approximately one year and believes the $3.2 million Option made by the Lender is a reasonable offer.  The Trustee projects that the Debtor's estate will receive approximately $600,000 in proceeds from the Chapter 11 Loan to pay for the Environmental Study and for administrative expenses.  The Debtor's estate will receive an additional approximately $500,000 if the Option is exercised.  If the Transaction is approved and the Option is not exercised, the Trustee will be in a better position to auction the Real Property because he will have the Environmental Study.  Burbank Decl. ¶ 37.

Based on the foregoing, the Trustee concludes that the proposed Transaction with Lender is in the best interests of the estate and the Trustee's negotiation of the Loan and Option Agreement is a reasonable exercise of his business judgment.

**2.      Fair and Reasonable Consideration**

The Trustee also believes that the Transaction should be approved because fair and reasonable consideration is being provided.  Under the Transaction, the Lender is providing a $2.6 million loan to the estate once the Approval Order is final, which will pay most of the Debtor's current secured creditors and allow the Trustee to conduct the Environmental Study. The Trustee has been marketing the Real Property since he was first appointed a year ago and

believes the Option is a reasonable offer.  Burbank Decl. ¶ 37.

### 3.     Good Faith

As set forth in the Burbank Declaration, the Loan and Option Agreement was negotiated in order to obtain an Environmental Study and realize a beneficial sale of the Real Property.  The Loan and Option Agreement is the result of good faith bargaining by the Trustee and the Lender to maximize value from the Real Property for the estate.  Burbank Decl. ¶ 31.

### C.     The Sale of the Business Assets Free and Clear of Liens and Other Interests Is Authorized by Section 363(f)

The Trustee requests that the sale of the Real Property pursuant to the Option be made free and clear of any claims or interests that may be held or asserted against the Real Property.  The Trustee submits that it is appropriate to sell the Real Property pursuant to the Option free and clear of liens under Section 363 (f) of the Bankruptcy Code, with any such liens attaching to the net sale proceeds of the Real Property to the extent applicable.  Section 363(f) of the Bankruptcy Code authorizes a debtor or trustee to sell assets free and clear of liens, claims, interest, and encumbrances if:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interests;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Real Property "free and clear" of liens and interests.  *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive.  Therefore, if any of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of liens."); *In re Bygaph, Inc.*, 56

B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Michigan Employment Sec. Comm'n v Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

     The Trustee intends to use the proceeds of the Chapter 11 Loan to pay all secured creditors other than the Water Resources Board and any security interest asserted by Hewitt or Weintraub. The Trustee believes the Water Resources Board will consent to subordinate its security interest to the Lender. The Trustee intends to use the proceeds from a sale pursuant to the Option to pay the Lender and the Water Resources Board to the extent of its secured claim. The Trustee believes, at a minimum, that the Water Resources Board's judgment lien for approximately $677,500 is subject to avoidance as a preference. Consequently, the Trustee projects that there will be sufficient funds from a sale under the Option to pay the Water Resources Board's secured claim in full. If there are insufficient funds, the Trustee believes the Water Resources Board will consent to a sale of the Real Property free and clear of its liens. Burbank Decl. ¶ 39.

     The Trustee intends to sell the Real Property free and clear of any interest of Hewitt or Weintraub in the Real Property on the basis that such security interests are subject to a bona fide dispute. To be a bona fide dispute under section 363(f)(4), there must be an objective basis for either a factual or legal dispute as to the validity of the debt. *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991); *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995). To qualify as a bona fide dispute, the propriety of the lien does not have to be the subject of an immediate or concurrent adversary proceeding. *In re Gaylord Grain L.L.C.*, 306 B.R 624, 627-28 (B.A.P. 8th Cir. 2004).

     Here, the deeds of trust held by Hewitt and Weintraub are against a leasehold interest between Capitol Waste and the Debtor. Capitol Waste executed the deeds of trust for the benefit of Hewitt and Weintraub; the Debtor did not grant any security interests to those entities and neither Hewitt nor Weintraub are creditors of the Debtor. Pursuant to a Settlement Agreement

effective as of January 11, 2013, Capitol Waste released any and all interests it had in the Real Property, including any leasehold interest. Under California law, a leasehold mortgagee loses its security if a tenant's lease is terminated. *Glendale*, 73 Cal. App. 4th at 1155. Under *Glendale*, any and all interest of Capitol Waste in the Real Property was released pursuant to the Settlement Agreement and the recorded Satisfaction of Judgment. Accordingly, as of January 2013, Capitol Waste no longer has any interest in the Real Property and all of Hewitt's and Weintraub's liens on Capitol Waste's leasehold interest in the Real Property, as evidenced by their respective deeds of trust, also were extinguished. Accordingly, the security interests of Hewitt and Weintraub are subject to a bona fide dispute and the Real Property can be sold free and clear of those interests.

To the extent there are any liens, interests, claims or encumbrances that are not properly perfected ("Unrecorded Liens"), the filing of the Chapter 11 cut off the perfection rights of any such unknown claimants and gave the estate the status of a bona-fide purchaser without notice of the Unrecorded Liens. 11 U.S.C. § 544. With respect to any statutory liens that may arise under state law based on the Debtor's insolvency proceedings or otherwise, such liens are avoidable under section 545. The Trustee is not aware of anyone asserting any Unrecorded Liens. Thus, a sale free and clear of the Unrecorded Liens is appropriate pursuant to section 363(f)(4).

Accordingly, the Trustee believes that the sale of the Real Property pursuant to the Option free and clear of liens to the maximum extent authorized by section 363(f) is appropriate.

**D.     The Bid Procedures Are Appropriate and Will Maximize the Value Received for the Estate.**

Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656-657 (Bankr. S.D.N.Y. 1992); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See., e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-565 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at

hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Trustee'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.*), 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988).

To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., In re Montgomery Ward Holding Corp.*, Case No. 97-1409 (PJW) (Bankr. D. Del. Aug 6, 1997); *In re Fruehauf Trailer Corp.*, Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated Resources*, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court –imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

The proposed Bidding Procedures will allow the Trustee to conduct the sale of the Real Property subject to the terms of the Transaction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Trustee will receive the best possible consideration for the Real Property by helping ensure a competitive and fair bidding process. The proposed Bidding Procedures also allow the Trustee to undertake the Transaction in as expeditious a manner as possible, which the Trustee believes is essential to maintaining and maximizing the value of the Debtor's estate. The Trustee believes that the Bidding Procedures will encourage bidding for the Real Property pursuant to the terms as set forth in the Transaction and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources*, 147 B.R. at 659; *995 Fifth Avenue Assocs.*, 96 B.R. at 28.

**E. The Successful Bidder Shall Be a Good Faith Purchaser and Is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code, and the Transfer of the Real Property Does Not Violate Section 363(n).**

The Trustee requests that the Court find that the Lender or a successful overbidder is

entitled to the full protections of section 363(m) of the Bankruptcy Code. A party would have to show fraud or collusion between the buyer and the trustee or other bidders in order to demonstrate a lack of good faith. *See Kabor Assocs. of West Islip, LLC v. Colony Hill Assocs.* (*In re Colony Hill Assocs.*), 111 F.3d 269, 276 (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves, fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

As set forth in the Burbank Declaration, the facts surrounding the Transaction, including a proposed sale of the Real Property to Lender under the Option support a finding of good faith under section 363(m) of the Bankruptcy Code. Lender is unrelated to the Trustee or the Debtor. Burbank Declaration ¶ 42. The Loan and Option Agreement, along with all related agreements, has been negotiated and is being proposed and entered into by the parties without collusion, in good faith, and from arm's length bargaining positions. *Id.* ¶ 43. No representative of the Debtor's estate or the Lender has engaged in any conduct that would cause or permit the Loan and Option Agreement or the transactions contemplated thereby to be invalidated or avoided as a collusive sale. *Id.* ¶ 44. The Justus Declaration further supports the granting of section 363(m) protection to Lender pursuant to the Option. If there is a successful overbidder, the Trustee intends to present additional evidence through one or more supplemental declarations following the hearing on the Motion that further supports the granting of section 363(m) protection to the ultimate purchaser of the Real Property pursuant to the Option.

WHEREFORE, based upon the foregoing, the Trustee requests that the Court to enter an order approving the relief requested as set forth herein.

Dated: July 11, 2017

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP

By:/s/ Thomas A. Willoughby
THOMAS A. WILLOUGHBY
Attorneys for Russell K. Burbank,
Chapter 11 Trustee